UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| AARON FISHER, | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:23-cv-1173 |
| -v- | ) | |
| | ) | Honorable Paul L. Maloney |
| CITY OF LANSING, | ) | |
| Defendant. | ) | |
| | ) | |

### AMENDED OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Aaron Fisher works for the City of Lansing as a firefighter. Plaintiff suffers from Post Traumatic Stress Disorder. Plaintiff contends that the City violated the Americans With Disabilities Act by when it denied Plaintiff's request for a service dog at the fire house. Defendant City of Lansing filed a motion for summary judgment (ECF No. 27). Because Plaintiff has not established a necessity for the animal, the Court will grant Defendant's motion.

I.

Plaintiff filed an amended complaint (ECF No. 5), which functions as the controlling pleading. Plaintiff includes the following allegations in his complaint. Plaintiff began working for the Lansing Fire Department in April 2004. Plaintiff suffers from Post Traumatic Stress Disorder (PTSD) and his symptoms were aggravated while on an emergency call. His doctor prescribed a service dog for Plaintiff while he was at the firehouse to help Plaintiff manage his symptoms. Plaintiff submitted a request for an accommodation to his Battalion Chief, who approved the use of a service dog at the station. Four months later, the Human

Resources (HR) Department ended the accommodation explaining that Plaintiff did not submit the necessary documentation. When Plaintiff did provide medical documentation, HR denied the request. Plaintiff filed a claim with the Equal Employment Opportunity Commission (EEOC), which issued a right to sue letter in August 2023.

Plaintiff pleads causes of action under the Americans With Disabilities Act (ADA) and under Michigan's Persons With Disabilities Civil Rights Act (PWDCRA). Relying the ADA, Plaintiff pleads that he suffered discrimination and retaliation. Plaintiff contends Defendant refused his request for a reasonable accommodation. Under state law, Plaintiff asserts that Defendant subjected Plaintiff to discrimination.

## II.

### A.

A trial court should grant a motion for summary judgment only in the absence of a genuine dispute of any material fact and when the moving party establishes it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Crop. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this burden, the moving party must identify those portions of the pleadings, depositions, answers to interrogatories, admissions, any affidavits, and other evidence in the record, which demonstrate the lack of genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018).

The moving party may also meet its burden by showing the absence of evidence to support an essential element of the nonmoving party's claim. *Holis v. Chestnut Bend*

*Homeowners Ass'n*, 760 F.3d 531, 543 (6th Cir. 2014). When faced with a motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Pittman*, 901 F.3d at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). The court must view the facts and draw all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Maben v. Thelen*, 887 F.3d 252, 263 (6th Cir. 2018) (citing *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In resolving a motion for summary judgment, the court does not weigh the evidence and determine the truth of the matter; the court determines only if there exists a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.

B.

The following facts find support in the record and are not meaningfully disputed by the parties. Plaintiff began suffering from PTSD around 2010 (ECF No. 27-2 Pl. Dep. at 132 PageID.149). His symptoms primarily affected Plaintiff's work at the fire station (*id.* at 145-48 PageID.152). During the time period relevant to this dispute, the City of Lansing had a policy for seeking reasonable accommodations in employment (ECF No. 27-9 PageID.210-12). In October 2019, Plaintiff received an email from Michael Macky, the fire chief, informing Plaintiff about the policy and also giving Plaintiff contact information for further assistance (ECF No. 27-10 PageID.214). The City's policy directs employees to complete a Reasonable Accommodation Request Form and to submit the form to HR (ECF

No. 27-9 PageID.211). The policy indicates that the form must be accompanied by a completed release of medical information form "and any necessary supporting documentation" (*id.*).

In March 2020, Plaintiff made a request to bring his dog "Chet" to work. Plaintiff had an initial conversation with his Battalion Chief, Paul Cleveland (Pl. Dep. at 166 PageID.157). Then, on March 18, 2020, Plaintiff sent a text to Cleveland stating that the "plan is for 3 to 6 months with the emotional support animal" (ECF No. 27-15 PageID.227). Plaintiff testified that Cleveland ultimately approved the request (Pl. Dep. at 163 PageID.156). Plaintiff also testified that Cleveland did not "push[] it any higher up" because "that would be making the chiefs above him and, you know, the city administration aware of it" (*id.*). Plaintiff began to bring his dog to work in March 2020 and continued to do so for about four months (*id.*). Plaintiff admitted at his deposition that, as of July 2020, he had not obtained approval from HR to bring his dog to work and that he did not make a request for a reasonable accommodation under the City's policy (*id.* at 173 PageID.159).

In July 2020, the City learned about Plaintiff's dog. Plaintiff had transferred shifts and informed his new coworkers about the situation (Pl. Dep. at 56-57 PageID.131-32). Plaintiff wanted to make people aware of his dog and wanted to make any necessary adjustments if his coworkers had concerns (*id.*). One of new coworkers informed HR about the dog (*id.*). On July 30, 2020, the City issued a notice to all fire department employees stating that employees were not allowed to bring pets of any kind to work (ECF No. 27-17 PageID.234). The notice included a reminder that service animals may brought to work with prior approval from the Human Resources Department (*id.*).

In mid-August 2020, Plaintiff submitted his request for a service animal using the City's approved form (ECF No. 27-18 PageID.235). Plaintiff also submitted a letter from Dr. Ronald Fandrick, a licensed clinical psychologist (ECF No. 27-19 PageID.237). Dr. Fandrick concluded that Plaintiff needed an emotional support animal during work hours at the fire station (*id.*). Around August 26, 2020, Kathy Woodman, the City's Health and Wellness Director, met with Plaintiff for over an hour to discuss his request (Pl. Dep. at 186-188 PageID.162). Near the end of September, Defendant denied Plaintiff's request for an accommodation (ECF No. 27-23 PageID.259).

### III.

Defendant City of Lansing seeks summary judgment on all of Plaintiff's claims. Defendant asks for summary judgment for an accommodation claim related to the denial of a service dog. Defendant addresses four different possible discrimination claims based on (1) the denial of a modified work schedule; (2) station transfers; (3) the alleged failure to respond to a complaint; and (4) an allegation that Plaintiff had to forgo seeking a promotion. Defendant argues that Plaintiff cannot establish a claim for harassment base on his disability. Finally, Defendant asserts that Plaintiff cannot establish a claim for retaliation.

### A.

In his response, Plaintiff advances only one claim, discrimination based on the failure to accommodate. Plaintiff pursues this cause of action under both state and federal law. By neglecting to address the other arguments raised in the motion for summary judgment, Plaintiff has waived any opposition to dismissal of his other causes of action. *See Alexander v. Carter*, 733 F. App'x 256, 261 (6th Cir. 2018) ("When a plaintiff fails to address a claim in

response to a motion for summary judgment, the claim is deemed waived.") (internal quotation marks and edits omitted) (citing *Haddad v. Sec'y, U.S. Dept. of Homeland Sec.*, 610 F. App'x 567, 568-69 (6th Cir. 2015)).

### B.

An employer's failure to grant a reasonable accommodation to a disabled employee constitutes discrimination under the ADA. *Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 811 (6th Cir. 2020). Courts use a direct evidence test for failure to accommodate claims. *Id.*; *see Fisher v. Nissan North America, Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (clarifying that failure to accommodate claims use a direct evidence test and not an indirect evidence approach). For a failure-to-accommodate claim, a plaintiff must show (1) he was disabled within the meaning of the statute, (2) he was otherwise qualified for his position, with or without reasonable accommodation, (3) the defendant knew or had reason to know of the disability, (4) he requested an accommodation, and (5) the defendant failed to provide the necessary accommodation. *King v. Steward Trumball Mem. Hosp.*, 30 F.4th 551, 560 (6th Cir. 2022); *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018).

The employee must actually propose an accommodation. *Tchankpa*, 951 F.3d at 812. The proposed accommodation must be both reasonable and necessary. *Id.* at 812-13. The proposed accommodation must "address a key obstacle" that prevents the employee from "performing a necessary function" of his position. *Id.* at 812 (quoting *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010)). Seeking an accommodation for mere convenience will not suffice. *Id.* The employee must provide the employer with medical documentation to show the necessity of the proposed accommodation. *Id.* at 813.

Courts use a multi-part test to analyze accommodation claims but do not use the *McDonnell Douglas* framework. *Tchankpa*, 951 F.3d at 811. If the plaintiff demonstrates that the employer failed to accommodate a known disability, the employer bears the burden of proving that the proposed accommodation would impose an undue hardship on the employer. *Brumley*, 909 F.3d at 839. Because of the similar language in the ADA and in Michigan's PWDCRA, courts use the same standards and framework for evaluating failure to accommodate claims under the federal and state statutes. *Crispwell v. FCA US, LLC*, No. 23-1114, 2024 WL 3045224, at *8 (6th Cir. June 18, 2024).

Defendant advances three reasons for the Court to grant summary judgment and dismiss Plaintiff's failure to accommodate claim. Defendant argues that a service dog interfered with an essential requirement of Plaintiff's job, the need to respond to emergency calls as quickly as possible. Defendant argues that the request for a service dog was not reasonable because there would be times that the animal was not under Plaintiff's control. Defendant argues that Plaintiff cannot show a medical necessity for a service animal to enable him to perform the essential functions of his job.

1.

Defendant contends that having a service dog interfered with Plaintiff's ability to quickly respond to calls, an essential requirement of his position.[1] The record includes testimony that firefighters must be able to leave the station in less than 80 seconds for a fire

---

[1] The job description for a fire engineer includes, among other things, driving and operating a fire apparatus (ECF No. 27-3 PageID.178-79). The job description does not explicitly include the need to respond quickly to calls as a requirement. The document does state that the essential position function listed "do not include all functions which may be found in this position as duties and responsibilities may be added, deleted or modified at any time" (*id.* PageID.178).

7

call and in less than 60 seconds for a medical call (ECF No. 27-4 Martin Dep. at 21 PageID.184). As the engineer, Plaintiff drove the fire apparatus to the scene when responding to a call (*id.* at 22 PageID.185; Pl. Dep. at 24-25 PageID.123-24). Other firefighters also rode on the vehicle and the group could not leave until Plaintiff was ready to drive (Pl. Dep. at 25 PageID.124). Plaintiff acknowledged that an essential function of his job is to respond to calls as quickly as possible (*id.* at 24 PageID.123 and at 25 PageID.124). Because the animal could not go on the fire apparatus, when a call came in, Plaintiff would have to put the dog in a crate, which was in Plaintiff's bedroom, before he could leave the station (*id.* at 168-69 PageID.157-58).

Plaintiff has demonstrated a genuine issue of material fact whether the service animal interfered with his ability quickly respond to calls. Plaintiff testified that the additional time to crate the service animal was "negligible" (Pl. Dep. at 169 PageID.158). Plaintiff had less gear to put on that other firefighters and he typically had to wait for other firefighters to get ready before the group could leave (*id.*). Plaintiff testified there was never a time where he was the last one on the apparatus and the group was waiting for him (*id.* at 170 PageID.158).

2.

Defendant contends that Plaintiff's request for a service animal was inconsistent with ADA regulations because there would be times during a shift when the animal was not with Plaintiff and was not under his control. Defendant used the lack of control as a reason to deny Plaintiff's request for a service animal (ECF No. 27-23 PageID.259). The relevant provision in the Code of Federal Regulations requires control of a service animal.

> Animal under handler's control. A service animal shall be under the control of its handler. A service animal shall have a harness, leash, or other tether, unless either the handler is unable because of a disability to use a harness, leash, or other tether, or the use of a harness, leash, or other tether would interfere with the service animal's safe, effective performance of work or tasks, in which case the service animal must be otherwise under the handler's control (*e.g.*, voice controls, signals, or other effective means).

28 U.S.C. § 35.136(d).[2] One district court has interpreted the regulation as prohibiting "the practice of leaving a service animal unattended." *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 547 (C.D. Cal. 2011) (interpreting 28 U.S.C. § 36.302(c)(4)).

The Court declines to grant Defendant summary judgment on the basis that Plaintiff's service animal would not be under control while Plaintiff was responding to a fire or other emergency. Courts have not considered, in any meaningful way, the proper interpretation of the word "control" in these regulations. The *Shields* opinion considered the situation where a sight-impaired person used the leash to tie up the service animal while the individual enjoyed a ride at a theme park. Like the parties here, the opinion in *Shields* does not provide any reasoning or discussion of the word "control." While the dog would be unattended for the duration of the call, Defendant has not even suggested why placing the service dog in a crate or kennel would preclude the conclusion that the service animal was kept under control.

---

[2] Defendant cites to 28 U.S.C. § 36.302(c)(4). Part 36 of Title 28 of the Code of Federal Regulations applies to Title III of the ADA, which concerns places of public accommodations. Part 35 of Title 28 of the Code of Regulations applies to Title II of the ADA, which concerns state and local governments. The regulation Defendant cites in Part 36 also appears in Part 35, just in a different subsection.

3.

Defendant argues that Plaintiff cannot show that he needed a service animal to enable him to perform the essential functions of his job. As part of this argument, Defendant also argues that Plaintiff's medical documentation was insufficient to carry his burden. This third argument bears on the final element for a failure to accommodate claim, whether the defendant failed to provide a *necessary* accommodation. *See McDonald v. UAW-GM Ctr. for Human Res.*, 738 F. App'x 848, 853 (6th Cir. 2018) ("Her claim fails on this last prong; she cannot show that CHR failed to provide her with the *necessary* accommodation. That is, the evidence she provided at summary judgment is insufficient to show that the accommodation requested—a longer lunch break—was necessary to accommodate her.") (italics in original).

Defendant has demonstrated that a service dog was not necessary for Plaintiff to perform the essential duties of his job at the fire station. Plaintiff could perform the firefighting functions of his job at all times. Plaintiff has not alleged that his PTSD interfered with his ability to drive a fire apparatus or his duties at a fire; Plaintiff contends that his PTSD caused problems for him at the fire station during the time between calls (Pl. Dep. at 146 PageID.153; at 160 PageID.155). When asked if he was unable to perform his duties at the fire station, Plaintiff testified that he "wouldn't say completely unable to perform. It was just impacted, it wasn't optimal" (*id.* at 151 PageID.153). Plaintiff's deposition also includes the following exchange:

> Q. You testified that you were able to perform the essential functions of your job even without [the service animal], right? Was that your testimony?
> A. Yes. Not well, but yeah.

(*id.* at 164 PageID.156). In light of his testimony, to avoid summary judgment Plaintiff needed to point to evidence that his requested accommodations were necessary to accommodate his PTSD. *See McDonald*, 738 F. App'x at 853 (summarizing four opinions where the record lacked evidence of the necessity for the requested accommodation).

Plaintiff's evidence does not establish that the requested accommodation was a necessity for him to perform the essential functions of his job. Plaintiff submitted his written request for a service animal in August 2020 (ECF No. 27-18 PageID.236). On August 11, 2020, Dr. Fandrick wrote a letter stating that, in his clinical opinion, Plaintiff "needs an emotional support dog, for use during his fire station work duties, due to his work-related psychological problems" (ECF No. 27-19 PageID.238). Fandrick testified that he recommended an emotional support animal, not a service animal (ECF No. 27-21 Fandrick Dep. at 38 PageID.251). Fandrick made his recommendation after observing Plaintiff and his dog interact (*id.* at 39 PageID.251). Fandrick found that the animal had a calming effect on Plaintiff (*id.* at 46 PageID.253). Fandrick did not reach any conclusions about whether Plaintiff was unable to perform any particular duty of his job (*id.* at 43 PageID.252; at 51 PageID.254).

Plaintiff's medical evidence does not create a genuine issue of material fact. Dr. Fandrick recommended an emotional support animal for its calming effect. His conclusions do not support a claim under the ADA. The regulations for Titles II and III of the ADA authorize the use of service animals but do not authorize the use of emotional support animals. *See C.G. v. Saucon Valley Sch. Dist.*, 571 F. Supp. 3d 430, 441 (E.D. Pa. 2021)

(noting that animals that merely provide emotional support, comfort or companionship do not qualify as service animals under the ADA) (citation omitted); *see, e.g., Riley v. Bd. of Comm'rs of Tippecanoe Cnty.*, No. 4:14cv63, 2017 WL 4181143, at *5 (N.D. Ind. Sept. 21, 2017) (requiring the plaintiff, for his ADA claim, to show that his dog qualified as a service animal "as opposed to, e.g., untrained or emotional support animals"). The definition of service animal in the regulations implementing Title II supports the distinction.

> Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purpose of this definition. The work or tasks performed by a service animal must be directly related to the individual's disability. Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks .... The crime deterrent effects of an animal's presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purpose of this definition.

28 U.S.C. § 35.104.[3] Dr. Fandrick found that the presence of the animal would be helpful to Plaintiff. Dr. Fandrick did not conclude that Plaintiff needed a service animal to perform the duties of his job.[4]

Other evidence supports permits an inference that Defendant could perform his fire station duties without a service animal. Plaintiff received a positive performance review after the denial of his request for a service animal (Pl. Dep. at 192-93 PageID.163-64). Plaintiff

---

[3] Plaintiff cites to 49 C.F.R. § 37.3 for the definition of the term service animal. That definition does not include the last sentence or any other reference to emotional support. The Department of Transportation promulgated the regulations in Title 49 Part 37 to implement the transportation provisions of Title II and Title III of the ADA. This dispute does not concern any transportation services offered by Defendant.

[4] The Court has not considered whether Plaintiff's dog qualified as a service animal under the ADA

testified that he used a lot of sick leave while waiting for the decision on his request for a service animal (*id.* PageID.185-86 PageID.162).  In the months and years following the denial of his request for a service animal, Plaintiff has used less sick time than he was using before the denial and has accumulated and banked over five hundred hours of sick leave (*id.* at 194-98 PageID.164-65; at 202-03 PageID.166).  Finally, in the years following the denial of his request for a service animal, Plaintiff has consistently increased the amount of overtime he has worked (*id.* at 200-03 PageID.165-66).

IV.

To prevail on a failure to accommodate claim, Plaintiff Fisher needs to establish that his requested accommodation was reasonable and necessary.  The proposed accommodation must address a key obstacle that prevented Plaintiff from perform an essential function of his position.  Defendant City of Lansing has established that Plaintiff could perform his duties at the fire station without a service animal.  Plaintiff's evidence does not create a genuine issue of material fact that he needed a service animal in order to do his job at the fire station.  The clinical psychologist recommended that Plaintiff have access to an emotional support animal, not a service animal.  And, the psychologist did not conclude that Plaintiff could not perform the essential duties of his job at the fire station without the assistance of an animal.  While the record demonstrates that Plaintiff benefitted from the presence of his dog, that evidence does not support an ADA claim for a failure to accommodate.

## ORDER

For the reasons provided in the accompanying Opinion, the Court **GRANTS** Defendant City of Lansing's motion for summary judgment (ECF No. 27). This is a final order as it resolves all of the pending claims. **IT IS SO ORDERED.**

Date:   April 29, 2025                                        /s/  Paul L. Maloney
                                                                                     Paul L. Maloney
                                                                                     United States District Judge